UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SEAN MICHAEL SWENDSEN, individually as a remainder beneficiary of and derivatively on behalf of the Richard I. Swendsen Trust,<br><br>                    Plaintiff,<br><br>v.<br><br>RICHARD I. COREY, trustee of the Richard I. Swendsen Trust; and CLAYNE I. COREY, an individual in possession of assets of the Richard I. Swendsen Trust and account and attorney to the Trust and Trustee,<br><br>                    Defendants. | Case No. 1:09-CV-229-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court are Defendant Clayne Corey's Motion for Partial Summary Judgment (Dkt. 73), and Defendant Richard Corey's Motion for Leave to Add Third Party Complaints (Dkt. 75). The Motions are fully briefed and at issue. The Court finds that oral argument would not significantly assist the decisional process. Having considered the record and pleadings filed therein, the Court rules as follows.

## BACKGROUND

Plaintiff Sean Swendsen is a remainder beneficiary of the Richard I. Swendsen Trust. Richard Swendsen, Plaintiff's grandfather, was grantor and trustee of the

Swendsen Trust as restated in May 1994. Richard Swendsen's nephew, Defendant Richard Corey, became successor trustee upon Richard Swendsen's death on October 13, 1997. Clayne Corey, Richard Corey's son, is also named as a defendant.

Plaintiff filed this lawsuit against Richard Corey for breach of trust and fiduciary duty, among other claims.[1] Against Clayne Corey, Plaintiff alleges professional malpractice, and additional claims related to Clayne Corey's involvement in Richard Corey's breaches against the Trust. According to Plaintiff, Clayne Corey owed a duty to the Trust and its beneficiaries based on the attorney-client relationship formed when he performed legal and accounting work for the Trust. *Simmons Aff.*, Dkt. 81-1 at 12-13. Clayne Corey asserts that his work for the Trust was limited to the preparation of tax forms, for which there is no specific allegation of negligence. *See R. Corey Aff.*, Dkt. 73-4, ¶ 6. Clayne Corey moves to dismiss all claims against him for lack of standing and under the applicable Idaho statute of limitations.

Richard Corey initially retained Breck Barton & Associates, and pro hac vice counsel from the firm of Callister, Nebecker & McCullough (CNM), to represent him in this matter. Counsel represented Richard Corey from roughly August 2009 to August 2010, when they moved for, and were granted, leave to withdraw. *Order*, Dkt. 58. Richard Corey later filed a Notice of Appearance Pro Se (Dkts. 61, 62), and has since

---

[1] Among other allegations, Plaintiff asserts that Richard Corey improperly loaned Trust funds to Clayne Corey in 2000 and 2003. *Compl.*, Dkt. 1.

represented himself.

Richard Corey moves for leave to add third party complaints against the partners and employees of CNM, for alleged legal malpractice, conflict of interest, and negligent supervision in representing him in this case. Richard Corey also asks to add third party complaints against Beth Swendsen and the Beth Swendsen Trust for unjust enrichment and fraud, among other claims, and against attorney Richard M. Matheson, for negligence and malpractice in his representation of Richard Corey as trustee.

## DISCUSSION

**1. Motion for Partial Summary Judgment**

Defendant Clayton Corey moves for summary judgment as to the four causes of action alleged against him: knowingly taking advantage of Richard Corey's breach of fiduciary duty; acquiring Trust property with knowledge of Richard Corey's breach of Trust; trespass on Trust property or constructive trust; and professional malpractice. Clayton Corey argues that Plaintiff lacks standing to assert malpractice, and that the applicable statute of limitations has run on the remaining claims.

**A. Legal Standard**

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going

to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Liberty Lobby*, 477 U.S. at 256-57. The nonmoving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel.*

*Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

    **B.**    **Standing for Professional Malpractice Claim**

In Idaho, "professional malpractice" is defined as "wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under Idaho law." I.C. § 5-219(4). To establish a claim for legal malpractice, one must show: (1) existence of an attorney-client relationship; (2) existence of a duty on the part of the attorney; (3) the attorney's failure to perform that duty; and (4) that the attorney's negligence was a proximate cause of damage to the client. *Harrigfeld v. Hancock*, 90 P.3d 884, 886 (Idaho 2004)(citations omitted). Clayne Corey argues that, even if the evidence is construed in a light most favorable to the Plaintiff, the first element – the existence of an attorney-client relationship – has not been established.

The Plaintiff's claims of professional malpractice against Clayne Corey are based on duties he allegedly owed to the Trust as both an accountant and an attorney. *Am. Compl.*, Dkt. 50, ¶¶ 121-24. It appears from the briefing that Plaintiff does not dispute that Clayne Corey only provided the Trust with accounting services for tax years 1997-1999. However, there is no suggestion in the record that Clayne Corey breached a

duty of care to the Plaintiff in the rendering of those accounting services.  Nor, is there any suggestion that any damages suffered by the Plaintiff were caused by the manner in which those accounting services were rendered.   Accordingly, the Court will grant summary judgment to Clayne Corey as to Plaintiff's claim of accounting malpractice.

Plaintiff argues, however, that Clayne Corey, in a variety of ways, represented that he was providing his services as a lawyer.   In determining whether an attorney-client relationship exists, one must look to the putative client's "subjective belief, which [must be] reasonable under the circumstances," or to "assent by both the putative client and attorney." *Warner v. Stewart*, 930 P.2d 1030, 1035 (Idaho 1997)(citations omitted). Notably, Plaintiff here has not pointed to evidence that he subjectively believed there was an attorney-client relationship between Clayne Corey and the Trust.  Nor has Plaintiff demonstrated assent to such a relationship.

Instead, Plaintiff cites to evidence that Clayne Corey has used letterhead and signed his name on the Trust's IRS forms, indicating that he is an attorney; Plaintiff also notes that Richard Corey sent a fax cover sheet to Clayne Corey, referencing Clayne Corey's law degree and law firm.  *Pl. Opp. to Mot.*, Dkt. 80 at 5.  This evidence shows nothing more than that Clayne Corey is an attorney, and that his father – trustee to the Swendsen Trust – also knew this.  These facts are unchallenged here.

The only other evidence Plaintiff cites to support that an attorney-client relationship existed between Clayne Corey and the Trust is an entry on Richard Corey's register of Trust bank account transactions. *Register*, Dkt. 81-2 at 43.  The entry appears

to indicate that on 2/26/99, check number 133 for $1,125.00, was issued to Clayne Corey and noted as, "Legal Fees - Odorizzi." *Id*. It is unclear who or what Odorizzi is. Plaintiff cites no other supporting or explanatory evidence.

The Court need not adopt unreasonable inferences from the evidence presented. *McLaughlin*, 849 F.2d at 1208. Nor is the Court "required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen,* 237 F.3d at 1029 (citations omitted). Defendant having pointed to the absence of evidence; Plaintiff must therefore "direct [the Court's] attention to specific triable facts." *Southern California Gas Co.*, 336 F.3d at 889. Plaintiff has not done so here.

Based on the record before it, the Court finds that there is no genuine factual dispute for a jury to decide concerning the existence of an attorney-client relationship, or any of the other elements required for a legal malpractice claim. Thus, the Court will grant Clayne Corey summary judgment as to Plaintiff's legal malpractice claim.

    **C.**    **Statute of Limitations For Claims Concerning Breach of Duty**

Clayne Corey argues that the applicable statute of limitations precludes Plaintiff's remaining claims against him: knowingly taking advantage of Richard Corey's breach of duty, acquiring Trust property (funds) with knowledge of the breach, and trespass on Trust property. There being no specific statute of limitations for these claims, the four-year statute of limitations in Idaho Code § 5-224 is applied. *C.f. Jones v. Runft, Leroy, Coffin & Matthews*, 873 P.2d 861, 868 (Idaho 1994).

Reasoning that "it is inequitable to bar someone . . . from seeking redress" who is

unaware he has been harmed, the courts generally recognize application of the "discovery rule." *Bibeau v. Pacific Northwest Research Fnd.*, 188 F.3d 1105, 1108 (9th Cir. 1999). Under this rule, the statute of limitations begins to run only upon a plaintiff's knowledge "of the critical facts that he has been hurt and who has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122 (1979). However, where the statute of limitations has run, a plaintiff will be barred from asserting a claim even without actual knowledge of his injury, if he should have known of the injury through due diligence. *Bibeau*, 188 F.3d at 1108 (other citations omitted). "[W]hat [a plaintiff] knew and when [he] knew it are questions of fact." *Id.* (quoting *Simmons v. United States*, 805 F.2d 1363, 1368 (9th Cir. 1986)).

     Plaintiff here filed his original complaint on May 14, 2009. Thus, for Plaintiff's claims to be timely filed, the evidence must indicate that Plaintiff was unaware of his injuries caused by Defendant, until after May of 2005. Clayne Corey argues that as early as 2003, Plaintiff knew or should have known through due diligence, about the loans about which Plaintiff asserts injury. *C. Corey St. of Facts*, Dkt. 73, ¶¶ 20-21. Citing his deposition testimony, Plaintiff counters that he did not know or have reason to know of facts concerning his injury until sometime in 2008. *S. Swendsen Dep.*, Ex. 4 to *Simmons Aff.*, Dkt. 82-2 at 8-11, 14-15, 20-21. Given the positions of the parties, the Court finds that there is a factual dispute about whether and when Plaintiff was aware of his injury, and thus, whether the statute of limitations had run, barring Plaintiff's claim. Accordingly, the Court finds that summary judgment on this issue is inappropriate.

### D. Duty of Care Regarding Remaining Claims

Although Clayne Corey raised a statute of limitations argument, he did not challenge whether he owed a duty of care to Plaintiff concerning the remaining claims: knowingly taking advantage of Richard Corey's breach of duty, acquiring Trust property (funds) with knowledge of the breach, and trespass on Trust property. In Idaho, "[n]o liability exists under the law of torts unless the person from whom relief is sought owed a duty to the allegedly injured party." *Jones v. Starnes*, 245 P.3d 1009, 1012 (Idaho 2011)(quoting *Vickers v. Hanover Constr. Co., Inc.* 875 P.2d 929, 932 (1994)). Whether or not there is a duty of care "is a question of law over which [the] Court exercises free review." *Jones*, 245 P.3d at 1012 (other citations omitted).

The Court finds that whether Clayne Corey owed a duty of care to Plaintiff on his remaining claims is a legal question appropriate for the Court's consideration on summary judgment. Indeed, the Court has reservations as to whether such a duty exists and whether the claims asserted by the Plaintiff are cognizable. However, since the parties have not addressed this issue in their briefing, they will be given an opportunity to do so – as set forth in this Order below – after which the Court will enter a separate ruling.

### 2. Motion for Leave to Add Third-Party Complaints

Defendant Richard Corey seeks leave to add third-party complaints against: (1) Beth Swendsen and her personal Trust, by and through her trustee and her representative holding power of attorney, for unjust enrichment, fraud and intentional deceit, trespass on

MEMORANDUM DECISION AND ORDER - 9

trust property and constructive trust; (2) attorney Richard Matheson, for professional negligence or legal malpractice; and (3) Callister, Nebeker and McCullough (CNM), their partners and employees, specifically Lee McCullough, Thomas Price, and Kent Brown, for professional negligence or legal malpractice, professional negligence or conflict of interest, and negligent supervision. *Mot. to Amd.*, Dkt. 75. Richard Corey's motion was filed on November 15, 2010, three days after the agreed deadline to add third-party complaints. *Order*, Dkt. 72. Plaintiff and Co-Defendant Clayne Corey filed Notices of Non-Opposition (Dkts. 77 and 79); CNM filed an Opposition (Dkt. 83).

Rule 14 permits the addition of third-party complaints. Fed. R. Civ. P. 14(a). The decision whether to implead a third-party defendant is left to the sound discretion of the trial court. *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986). The purpose of impleader is to promote judicial efficiency by avoiding separate actions against third parties who may be liable to defendant for part or all of plaintiff's original claim. 6 Fed. Prac. & Proc. Civ § 1442 (3d ed.). Impleader also helps to avoid inconsistent outcomes for claims based on the same or similar evidence. *Id.*

Impleader is appropriate where a defendant "is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff." *Stewart v. American Int'l Oil 7 Gas Co.,* 845 F.2d 196, 200 (9th Cir. 1988). The third party's liability must be "in some way dependent on the outcome of the main claim and [be] secondary or derivative thereto." *Id.* at 199 (citation omitted). In other words, the third-party defendant's liability must be contingent on the success of the plaintiff's main claim,

and must be for losses that the third-party plaintiff incurs in his capacity as defendant to plaintiff's claims. *In re Street*, 283 B.R. 775, 780 (Bankr.D.Ariz. 2002). It is not enough that the third-party claim simply arise out of the same set of facts as the original claim. *Stewart*, 845 F.2d at 200.

In exercising discretion whether to grant leave to file a third-party complaint, the courts have considered a number of factors, including: (1) timeliness of the motion; (2) whether impleader would delay or unduly complicate the trial; and (3) prejudice to the third-party. 6 Fed. Prac. & Proc. Civ § 1443 (3d ed.); *see M.O.C.H.A. Society, Inc. v. City of Buffalo*, 272 F.Supp.2d 217 (W.D. N.Y. 2003)(also including, as a consideration, whether the third-party complaint states a claim on which relief can be granted); *Zero Tolerance Entertainment, Inc. v. Ferguson*, 254 F.R.D. 123, 127 (C.D.Cal. 2008). As to the first factor, the Court recognizes that Richard Corey filed his motion only three days beyond the deadline to amend pleadings. The Court is also mindful that Richard Corey filed the motion without counsel, who had withdrawn three months prior. However, the deadline missed was one to which Richard Corey had stipulated one month before. *Stipulation*, Dkt. 71. The Court thus finds that this factors weighs slightly in favor of denying the motion.

With respect to delay, the Court notes that this case has been pending for almost two years. The Court has already extended case management deadlines three times (Dkts. 49, 65, 72), with an admonition that no further continuances would be allowed. The agreed deadline of November 12, 2010, for filing dispositive motions has passed. *Order*,

MEMORANDUM DECISION AND ORDER - 11

Dkt. 72. Allowing Richard Corey to bring in third party defendants will necessarily cause substantial delay to the already protracted schedule in this matter.

The courts have found that substantial delay caused by extending the discovery cut-off date and delay in trial is itself prejudicial, and weighs heavily against impleader, even where the parties have stipulated that a plaintiff will not be prejudiced by a defendant's motion to file a third-party complaint. *Zero Tolerance*, 254 F.R.D. at 127; *see also Irwin v. Mascott*, 94 F.Supp.2d 1052, 1056 (N.D. Cal. 2000). Thus, impleader will be permitted at this late juncture only where clearly appropriate under Rule 14.

### A. Motion to Implead CNM

In its opposition, CNM asserts that it should not be added as a third-party because: (1) impleader is inappropriate under Rule 14; (2) a professional malpractice claim against CNM would not accrue until after judgment of this suit; (3) the malpractice claim should be litigated in the pending Utah state action under the first-to-file rule; and (4) the claims against CNM lack substantive merit. The Court first considers CNM's argument under Rule 14.

Richard Corey alleges that CNM was negligent, or committed malpractice, in representing him in this case. Richard Corey seeks permission to implead CNM, arguing that his claims against CNM are integrally linked to Plaintiff's underlying suit against him. Richard Corey is attempting to transfer liability asserted against him by Plaintiff, to CNM. However, the Court finds no grounds to conclude that Richard Corey's claims against CNM derive from or are based on Plaintiff's claims against Richard Corey. For

example, whether CNM failed to timely assert legal defenses on Richard Corey's behalf in this case does not derive from Richard Corey's alleged breach of fiduciary duty to the Trust.

Although there are no Ninth Circuit cases on point, the Court looks to out-of-circuit cases cited by CNM. The District Court for the Southern District of Mississippi addressed a third-party complaint by a defendant insurer against the insured's attorney for negligence, among other claims. *First Bank and Trust v. Employers Mutual Casualty Co.,* 268 F.R.D. 275 (S.D. Miss. 2010). That court held that the defendant insurer's

> . . . characterization of any part of its third-party complaint as asserting claims against [the insured's attorney] based on derivative or secondary liability is not well grounded. . . . [The insurer] had an independent duty to protect [the plaintiff's] interest in the property; and regardless of the specific theories or causes of action asserted, the claims by which [the insurer] seeks to impose liability on [the insured's attorney] are not derivative of any liability [the insurer] may have for a breach of that duty but rather are separate and independent.

*First Bank*, 268 F.R.D. at 278 (citing *City of Orange Beach, Ala. v. Scottsdale Ins. Co.*, 166 F.R.D. 506 (S.D.Ala.1996)).

In the *City of Orange* case cited in *First Bank*, the underlying claim was by an insured against its insurer. *City of Orange*, 166 F.R.D. at 511. That court held that the insurer's third-party complaint for malpractice against insured's attorney asserted separate and independent claims that could not be properly impleaded under Rule 14(a), because the insurer had an independent duty to the insured to fully investigate claims. *Id.*

The Court here agrees with the reasoning set forth in *First Bank* and *City of*

*Orange*, and finds those decisions consistent with the Ninth Circuit's holding in *Stewart*. Applied here, the Court concludes that Richard Corey's proposed third-party complaint against his attorneys in this matter are separate from the underlying action. Richard Corey had an independent duty to the Trust; his claims against his attorneys do not derive from any liability he may have for a breach of his duty to the Trust. Accordingly, the motion to add CNM as a third-party-defendant will be denied. Having reached this conclusion, the Court need not address CNM's other arguments.

B. **Motion to Implead Matheson**

Richard Corey's claims against attorney Richard Matheson assert legal malpractice for Matheson's failure to properly advise him regarding a "Trustee's duty to [ ] remainder beneficiaries under Idaho law," specifically, that "remainder beneficiaries . . . have a legal interest in the administration of the [ ] Trust." *Prop. Am. Answer*, Dkt. 75-3, ¶¶ 24, 26. According to Richard Corey, had Matheson appropriately advised him, Richard Corey would have "provided the necessary documentation to all the beneficiaries of the Trust." *Id.*, ¶ 28. As with claims against CNM, it appears Richard Corey seeks to hold Matheson liable for claims asserted against him by Plaintiff.

Plaintiff's Amended Complaint includes the following counts against Richard Corey: (I) for an accounting; (II) breach of trust, and (III) breach of fiduciary duty, regarding imprudent loans of Trust money to Clayne Corey; (IV) removal of Richard Corey as Trustee; and breach of fiduciary duty in (IX) making speculative and risky investments, (X) favoring one beneficiary – Beth Swendsen – over others, and (XI)

investing to benefit himself and third parties. *Am. Compl.*, Dkt. 50 at 15-34. The Court finds no link between these claims and whether Matheson failed to appropriately advise Richard Corey about providing remainder beneficiaries with Trust administration documentation. As with his claims against CNM, Richard Corey's claims against Matheson are independent of his duties to Plaintiff, as raised in Plaintiff's claims against him.

Also, an action for professional malpractice in Idaho does not accrue until "some damage" occurs, thus preserving accrual of the two year statute of limitations for such actions. *City of McCall v. Buxton*, 201 P.3d 629, 632 (Idaho 2009). "Potential harm or an increase in the risk of damage is not sufficient to constitute some damage." *Id.* Damages relating to Richard Corey's claim against Matheson would not occur unless and until a judgment is entered against Richard Corey, in favor of Plaintiff. *See Rice v. Litster*, 980 P.2d 561, 565 (Idaho 1999). Thus, even if Richard Corey's claims against Matheson did depend on the outcome of the underlying action, there would be little if any efficiency gained by litigating those claims before judgment against Richard Corey is determined or entered.

For these reasons, Richard Corey has failed to establish that joinder of Matheson as a third party defendant is appropriate. The motion to implead Matheson will therefore be denied.

### C. Motion to Implead Beth Swendsen

Richard Corey also moves to implead Beth Swendsen and the Beth Swendsen

Trust. Richard Corey alleges that Beth Swendsen lied about and failed to disclose to him, relevant information about her income and what funds are necessary for her support. *Am. Answer*, Dkt. 75-3 at 1-8. As a result, Richard Corey contends, Beth Swendsen is liable to the Trust for $201,000 overpaid to her. *Id.*

Of the claims against Richard Corey, only Count X pertains to Beth Swendsen: that Richard Corey favored Beth Swendsen over other beneficiaries, thus breaching his fiduciary duty of impartiality. *Am. Compl.*, Dkt. 50 at 33. Specifically, Plaintiff alleges that Richard Corey changed the Trust's mix of assets from significantly favoring growth (as it was at the time of Richard Swendsen's death), to favoring income, which benefitted Beth Swendsen over remainder beneficiaries. Under the terms of the Trust, the trustee is to ensure the "proper support, care, maintenance and health" of Beth Swendsen, until her death, using an account set up specifically for Beth Swendsen (initially holding $150,000), as well as up to an additional $150,000 from Trust principal. *Am. Compl.*, Dkt. 50, ¶¶ 8, 27, 28. Upon her death, Plaintiff and Richard Swendsen's other grandchildren – as remainder beneficiaries – share either 25% of remaining Trust assets, if Mike Swendsen (Plaintiff's father) is still living, or 100% of remaining Trust assets if Mike Swendsen's death precedes Beth Swendsen's. *Id.*, ¶¶ 30, 32, 33.

Although Richard Corey's claims – as trustee – against Beth Swendsen share many of the same facts as Plaintiff's Count X against Richard Corey, it appears they are not dependent on the outcome of Plaintiff's action. In other words, Richard Corey's claims against Beth Swendsen exist "regardless of the ultimate success or failure of the

plaintiff's action." *See In re Street*, 283 B.R. at 781 (citation omitted). The fiduciary duty owed by Richard Corey to Plaintiff is separate from any duty owed by Beth Swendsen to either Richard Corey or Plaintiff. Accordingly, the motion to add Beth Swendsen as a third-party-defendant will be denied.

## ORDER

**IT IS ORDERED THAT:**

1. Defendant Clayton Corey's Motion for Partial Summary Judgment (Dkt. 73) is **GRANTED** as to Plaintiff's claim of professional malpractice.

2. As to Clayton Corey's Motion for Partial Summary Judgment (Dkt. 73) of Plaintiff's remaining claims against him, the Court orders the following expedited briefing schedule on the issues of whether Clayne Corey owed a duty of care with respect to those claims, and whether those claims are legally cognizable:

    a. Clayton Corey's Opening Brief shall be due May 6, 2011.

    b. Plaintiff's Response shall be due May 20, 2011.

    c. Clayton Corey's Reply, if any, shall be due May 27, 2011.

    d. The Court will not hear oral argument, but will rule on the pleadings.

3. Defendant Richard Corey's Motion For Leave to Add Third-Party Complaints (Dkt. 75) is **DENIED** as to third-party defendants Beth Swendsen and the Beth Swendsen Trust, Richard M. Matheson, and Callister, Nebeker & McCullough.

DATED: **April 15, 2011**



_____
Honorable B. Lynn Winmill
Chief U. S. District Judge