John Simmons, ISB 3156
John Simmons JD LLM Prof Co
796 Memorial Drive
Idaho Falls, Idaho 83402
208.528.9901//Fax: 208.528.0101
jsimmons@ida.net
Attorney for Plaintiff

***UNITED STATES DISTRICT COURT***
***for the District of Idaho***

| | |
|---|---|
| **Sean Michael Swendsen**, individually as a remainder beneficiary of and derivatively on behalf of the **Richard I Swendsen Trust,**<br>PLAINTIFF,<br>VS.<br>**Richard I Corey**, trustee of the Richard I Swendsen Trust, and **Clayne I Corey**, an individual in possession of assets of the Richard I Swendsen Trust and accountant and attorney to the Trust and trustee,<br>DEFENDANTS. | CASE # CV 09-229-E-BLW<br><br>***Motion** in limine **Objecting to Designated Expert Witness Mark Anderson*** |

The Plaintiff, Sean M Swendsen, by and through counsel of record, hereby makes this motion *in limine*, challenging the admissibility of the proffered opinions of defendant Richard I Corey's expert witness, Mark Anderson, so designated by then counsel for Richard I Corey on or about July 21, 2010. This motion is a '*Daubert* challenge' to Mr Anderson's opinions.

***<u>Federal Rules of Evidence 702 and 703</u>***

The standard for the admissibility of expert testimony is found in Federal Rule of Evidence 702 which states in pertinent part: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

***Daubert* and *Kumho Tire***

The standard for expert testimony was the subject of extensive analysis in *Daubert v Merrell Dow Pharmaceuticals Inc*, 509 US 579, 113 SCt 2786, 125 Led2d 469 (1993) and *Kumho Tire Co Ltd v Carmichael*, 526 US 137, 119 SCt 1167, 143 Led2d 238 (1999). From these cases, it is clear that the trial judge is 'a gatekeeper' regarding expert testimony, insuring that such testimony is both relevant and reliable. *Dauber*, 509 US at 589-91, 113 SCt at 2786; *Kumho Tire*, 526 US at 147, 19 SCt at 1167 (extending *Daubert*'s "gatekeeping obligation" to expert testimony that is technical or other specialized knowledge, as well as that which is scientific). These decisions of relevance and reliability regarding proffered expert testimony are committed to the sound discretion of the trial court. *Daubert*, 509 US at 591, 113 SCt at 2786.

*Daubert* identified four factors that a trial court may use regarding reliability:

(1) whether the theory has been or can be tested;
(2) whether the theory has been subject to peer review or been published;
(3) when a particular technique is used, that technique's known rate of error; and
(4) the extent of the acceptance of the theory in the relevant scientific community.

*Daubert*, 509 US at 593-94, 113 SCt at 2786. These are not elements, each of which are necessary nor exclusive of other considerations that the trial court shall make. This list of four "specific factors neither necessarily nor exclusively applies to all experts or in every case." The trial judge is to determine, in his discretion, what criteria are reasonable to apply in determining if the proffered expert testimony is sufficiently reliable to present at the trial. *Kumho Tire*, 526 US at 158, 119 SCt at 1167. Inherent in this trial court determination is flexibility, such as in the factors the trial court initially determines to consider. *Primiano v Cook*, 598 F3d 558 (9th Cir 2010), **citing** *White v Ford Motor Co*, 312 F3d 998, 1007 (9th Cir 2002).

The Supreme Court has given further iteration to the trial court's task. The trial court is to decide if the proffered expert testimony has a "traceable, analytical basis in objective fact." *Bragdon v Abbott*, 524 US 624, 653, 118 SCt 2196, 141 Led2d 540 (1998). The

trial court should not admit "[o]pinion evidence that is connected to existing data only by the *ipse dixit* of the expert". *Kumho Tire*, 526 US at 157, 119 SCt at 1167.

Problems with an expert's methodology and lack of textual authority are improper criteria for asserting a *Daubert* challenge. *McCullock v HB Fuller Co*, 61 F3d 1043, 1043-44 (2nd Cir 1995) ("[D]isputes as to the strength of [the witnesses's] credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion go to the weight, not the admissibility, of testimony.").

***<u>Mark Anderson's Proferred Opinions and their Shortcomings</u>***

The proposed testimony of defendant Richard I Corey's expert, Mark Anderson, as set forth in his report (attached to the Affidavit of John Simmons of October 19, 2011) purports to establish the reasonableness of defendant Richard I Corey's decisions as trustee of the Richard C Swendsen Trust (*Dick's Trust*) in loans to Richard I Corey's own son, defendant Clayne I Corey, and to Clayne's law firm, as well as in making and retaining questionable investments for Dick's Trust in movie productions (Spooky House Productions and Bloodhounds Invasion), an infomercial production company, and electrical power brokers, etc. Anderson's opinions concerning the appropriateness of defendant Richard I Corey, as trustee, causing Dick's Trust to make the loans to his son, defendant Clayne I Corey, are wanting for reliability because—

1. Anderson applies a commercial lending viability analysis, not that higher standard of a prudent man standard when dealing with trust assets, held and administered for the benefit of others,
2. Anderson does not factor in the requirement of investment diversification or offer analysis of how risking such a large amount of Dick's Trust assets on one person with demonstrated emotional and financial problems and struggles, as defendant Richard I Corey knew concerning his son, defendant Clayne I Corey was reasonable,
3. Anderson fails to provide any data about investment markets for or engage in any 'benchmarking' analysis of these loans vis-à-vis other investment alternatives,

4. Anderson does not factor in the liquidity needs of Dick's Trust to meet its benefit payment obligations,
5. Anderson does not compare the loans against other investments available at the time defendant Richard I Corey, as trustee, caused Dick's Trust to advance sums as loan proceeds to his own son, defendant Clayne I Corey, and
6. Anderson does not address the subordination of the collateral in favor of other creditors of defendant Clayne I Corey, with Dick's Trust receiving no consideration therefore.

Anderson's opinions concerning the appropriateness of defendant Richard I Corey, as trustee, causing Dick's Trust to make and continue the investments in (i) Spooky House Productions, (ii) Bloodhounds Invasion, (iii) Infomercial Finance Group, (iv) N2K Inc, (v) LA Power & Light, (vi) Mieka 2002, (vii) Miasma Corp, (viii) International Capital Management, (ix) Bear Stearns, and (x) Lehman Bros, are wanting for reliability because—

1. Anderson nowhere in his report mentions or alludes to whether a prudent man in dealing with trust assets, held and administered for the benefit of others, would make such investments or why it would be prudent for a trustee so charged to do so; Anderson simply declares these investments reasonable either in no context or in the only prior context given in his report, that of commercial lending—which ricochets off the target questions for the jury at the trial of this matter,
2. Anderson fails to provide any data about investment markets for or engage in any 'benchmarking' analysis of these investments vis-à-vis other available investments, much less attempt to compare these investments against available alternatives at the time made or periodically while continued to be invested on Richard I Corey's watch as trustee,
3. In asserting that trustee Richard I Corey acted 'reasonably' (not necessarily prudently) in making these investments, Anderson notes that the Bear Stearns and Lehman Brothers investments were made "more than a decade before the companies were sold off." ¶ 26 of Anderson's report, attached to the Affidavit of John Simmons of October 19, 2011. However, Anderson does not attempt to

explain how trustee Richard I Corey's failure to sell off those investments in light of mounting public information, before the values of those investments were completely eviscerated was reasonable—which is the gravamen of the plaintiff's claims with respect to those investments, and

4. As to the others, Anderson asserts in his report that "[t]he private companies mentioned above represent start up companies with growth potential." *Id.* But as is endemic throughout his reported opinion, Anderson does not analyze how that in any way renders those investments appropriate for a trustee to make, prudently acting with assets to benefit others.

Ironically inasmuch as Anderson has failed to address the diversification problems posed by the loans that trustee Richard I Corey caused Dick's Trust to make to his own son, defendant Clayne I Corey and his law practice, Anderson cites a need for diversifying the investment portfolio of Dick's Trust as justification for trustee Richard I Corey having made some of these other investments and using investment managers. Mention of diversification as to these investments turns up the candlepower of the light shed on and makes more glaring how contrary to portfolio diversification the loans to defendant Clayne I Corey were for his father, Richard I Corey, to cause Dick's Trust to make.

(Russell J Johnson, by contrast, is qualified to testify regarding the standard for a trustee making investments of trust assets (as well as other matters addressed in his expert opinion report). Unlike Anderson, Johnson has extensive background and qualifications on these issues, having worked in trust and investment banking for 19 years, from 1983 to 2002. For more details of this experience, see Russell J Johnson 'Short Bio' attached to the Affidavit of John Simmons of October 19, 2011. His testimony will provide benchmarking comparisons and provide valuable information for the jury to sort out the competing claims in this lawsuit as to whether defendant Richard I Corey acted as a reasonably prudent man in making the investments that he did with assets of Dick's Trust.)

***Anderson's Opinion are Not Relevant***

The pivotal question in regards to the loans trustee Richard I Corey caused Dick's Trust to make to his son, defendant Clayne I Corey, re-finance on terms more favorable to Clayne with no return consideration for Dick's Trust, and subordinate the only collateral to others of Clayne's creditors again with no return consideration for Dick's trust, is not whether they are commercially viable loans. The pivotal question in regards to the other investments trustee Richard I Corey caused Dick's Trust to make and continue is not whether they are reasonable (in the void of any context or as what investment managers do for their clients). Rather, the pivotal question in this regard is whether doing so was the prudent thing for trustee Richard I Corey to do in managing assets for the benefit of others, including the plaintiff.

Anderson's opinions will not assist the trier of fact in this case to either understand any evidence or determine a fact in issue. *Primiano*. For Anderson's opinions, there is no "valid connection to the pertinent inquiry". *US v Sandoval-Mendoza*, 472 F3d 645, 654 (9th Cir 2006).

***Anderson Does Not Have Qualifications Pertinent to the Opinions Proffered***

Anderson's resume shows no qualifications to testify concerning the standard for a trustee making investments of trust assets. Anderson does not have the necessary experience, training, and knowledge to proffer the opinions contained in his report. His background is forensic accounting. He is not trained and he does not have experience as an investment professional, nor a commercial lender. Anderson's opinions about the "reasonableness" of the loans and investments in question will not assist the trier of fact to reach accurate results as to the higher standard of whether a trustee was acting prudently in dealing with assets held for the benefit of others. Anderson's opinions are not the product of a reliable methodology that can be peer reviewed and scrutinized. In short, Anderson's testimony simply 'misses the mark'.

For these reasons, plaintiff respectfully requests this Court order that Mark Anderson not be qualified as an expert nor permitted to provide expert testimony at the trial of this matter.

John Simmons
Attorney for Plaintiff

*Certificate of Service*

The filing of a document electronically with the Clerk of the Court using the CM/ECF system automatically triggers a Notice of Electronic Filing be sent electronically to each person on the ECF mailing list for the above-entitled case. By filing the foregoing ***Motion in limine Objecting to Designated Expert Witness Mark Anderson,*** using the CM/ECF system, the undersigned caused such document to be served on each person on the ECF mailing list for the above-entitled case, including each of defendants, Richard I Corey and Clayne I Corey. There are no other appearances in this case yet entitled to service.

John Simmons
Attorney for Plaintiff